**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 2 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PUBLIC EMPLOYEES'
RETIREMENT BOARD, as statutory
agent for the State of New Mexico,

Plaintiff - Appellant,

v.

DONNA SHALALA, Secretary of
Health and Human Services,

Defendant - Appellee.

No. 96-2180

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CIV-94-23-SC)**

---

Fred W. Schwendimann, Hinkle, Cox, Eaton, Coffield, Hensley, L.L.P.,
Albuquerque, New Mexico, appearing for Plaintiff-Appellant.

Thomas J. Clark, Attorney (Kenneth L. Green, Attorney, with him on the brief),
Tax Division, Department of Justice, Washington, DC, appearing for Defendant-
Appellee.

---

Before **TACHA**, **BRORBY**, and **BRISCOE**, Circuit Judges.

---

**TACHA**, Circuit Judge.

The state of New Mexico alleges that it overpaid Social Security taxes to the federal government by $28 million from 1983 to 1986. The resolution of this dispute turns on the interpretation of a single phrase: "salary reduction agreement." The sole issue here is whether contributions to a retirement plan for New Mexico State employees, made by the State after a corresponding reduction in the employees' gross salary, can be said to be contributions made pursuant to a "salary reduction agreement" if the employer contributions were mandated by State statute. We answer that question in the affirmative.

I.

When the Social Security system was established in the 1930s, there were concerns that imposing a Social Security tax on state and local government employees might be unconstitutional. The Social Security Act of 1935, therefore, exempted state employees. States, however, wanted to obtain Social Security coverage for their employees, and thus, in 1950 Congress allowed states to enter voluntary agreements with the federal government under which state employees would receive Social Security benefits. These agreements are called "section 218 agreements" because they are authorized by section 218 of the Social Security Act of 1950, codified at 42 U.S.C. § 418. New Mexico entered into a section 218 agreement in 1955. See N.M. Stat. Ann. § 10-14-1 to -11 (Michie 1995). It requires New Mexico to pay into the Social Security system an amount equal to

the taxes that would be imposed under the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101-3128, if its employees were covered by the Social Security Act.

The federal Social Security and Medicare systems are funded by excise taxes, separate and distinct from federal income taxes, imposed on employees, employers, and self-employed individuals. See 26 U.S.C. §§ 1401, 3101, 3111. In the case of employees and employers, FICA imposes the excise tax on the "wages" paid by an employer to an employee with respect to "employment." See 26 U.S.C. § 3101(a)-(b), § 3111(a)-(b). FICA taxes are paid in equal shares by employer and employee. See id. In general, all payments of remuneration by an employer for services performed by an employee are subject to FICA taxes, unless the payments are specifically excepted from the term "wages," or the services are specifically excepted from the term "employment." One such exception, relevant to this case, is codified in section 3121(a)(5)(A) of the Internal Revenue Code, which excepts from "wages" employer contributions made on behalf of the employee to a pension plan qualified under section 401(a) of the Code. An employee's own contributions to a qualified plan are not excepted from the FICA definition of wages. Thus, employer contributions are not subject to FICA taxes, but employee contributions are.

In addition to participating in the federal Social Security program under a

Section 218 agreement, New Mexico also administers two pension plans, both qualified under section 401(a) of the Code, for its employees. Most state employees are covered by a plan administered under the New Mexico Public Employees Retirement Act (PERA), N.M. Stat. Ann. § 10-11-1 to -141 (Michie 1995). The state's educational employees are covered by a plan administered under the New Mexico Educational Retirement Act (ERA), N.M. Stat. Ann. § 22-11-1 to -52 (Michie 1993). Employee participation in the pension plans is mandatory. See id. at §§ 10-11-3, 22-11-16.

In 1974, Congress added section 414(h) to the Code to provide state and local government employees with a federal tax break based on their participation in qualified retirement plans. Section 414(h)(1) states that amounts contributed to a qualified plan may not, for any tax purposes, be treated as employer contributions if they are designated by the employer as employee contributions. Section 414(h)(2) provides an exception to this rule, however, by allowing contributions (otherwise designated as employee contributions) to state and local government pension plans to be treated as employer contributions if the employer "picks up" the contributions. Employer contributions are not included within FICA wages, as noted above, or within "gross income" for income tax purposes, and thus are not immediately subject to FICA or federal income taxes, though employee contributions are. Seeing the significant tax advantages for its

employees under section 414(h), New Mexico "picked up" all designated employee contributions as employer contributions to the ERA plan, effective July 1, 1983, and to the PERA plans after May 21, 1986. See N.M. Stat. Ann. §§ 10-11-125, 22-11-21.1.

In 1983, Congress added a provision that reversed the effect of section 414(h), though only as it applied to FICA taxes. The 1983 amendment, codified at section 3121(v)(1)(B) of the Code and at 42 U.S.C. § 409(I)(2) (parallel provision), stated that the "picked up" amounts treated as employer contributions under section 414(h)(2) would thereafter be treated as FICA wages, and thus subject to FICA taxes. Congress did not change the treatment of picked up amounts for income tax purposes; picked up contributions are still not immediately subject to income tax.

Congress amended section 3121(v)(1)(B) in 1984 to its current version. Congress did not consider the 1984 change to be dramatic, labeling the amendment a technical correction. Nonetheless, that technical correction has become very important. Section 3121(v)(1)(B) now states that included within the definition of FICA "wages" is—

> any amount treated as an employer contribution under section 414(h)(2) *where the pickup referred to in such section is pursuant to a salary reduction agreement* (whether evidenced by a written instrument or otherwise).

26 U.S.C. § 3121(v)(1)(B) (1984 amendment in italics); see also 42 U.S.C. § 409(I)(2) (parallel provision); 26 U.S.C. § 3306(r)(1)(B) (identical provision included in Federal Unemployment Tax Act). Thus, following the 1984 amendment, any employee contributions "picked up" by the employer where the pickup was pursuant to a salary reduction agreement are FICA wages and subject to FICA taxes.

From July 1, 1983 through December 31, 1986, New Mexico included "picked up" contributions in its employees' "wages" for purposes of calculating its FICA liability. Under now-repealed I.R.C. § 418(s), New Mexico sought administrative review of its FICA liability, arguing that it was not liable for FICA taxes on those contributions because the contributions were not made pursuant to a salary reduction agreement. New Mexico does not dispute that the pickup arrangement resulted in a salary reduction, but rather argues that there was no "agreement" to reduce salaries here because the pickup, and the resulting salary reductions, were mandated by the New Mexico statutes under which the pension plans are administered. See N.M. Stat. Ann. §§ 10-11-125, 22-11-21.1. That is, New Mexico state employees have "no option concerning the pickup or to receive the contributed amounts directly instead of having them paid by the" State to the plan. Id. at § 10-11-125. By memorandum opinion written and issued by the Deputy Commissioner for Programs of the Social Security Administration, the

SSA rejected New Mexico's argument, concluding that state employee contributions were made pursuant to a salary reduction agreement even though the contributions were mandated by state law and no individual employee could negotiate out of making those contributions. The Commissioner for Programs subsequently affirmed the Deputy Commissioner's decision.

New Mexico then brought this suit in district court under now-repealed I.R.C. § 418(t), which gave a district court jurisdiction to "redetermine the correctness" of a tax assessment made by the Secretary. Section 418(t) was in effect during 1983 through 1986, the relevant time period in this appeal. The parties filed cross-motions for summary judgment, based upon a record that included an extensive stipulation of facts and the transcript of the administrative proceedings. The district court granted the Secretary's motion for summary judgment, upholding the Secretary's interpretation of salary reduction agreement. New Mexico appealed the district court's grant of summary judgment to the Secretary.

II.

The parties first take issue with the standard of review in this case and the appropriate level of deference, if any, that we should give the memorandum opinion in which the Commissioner for Programs interpreted "salary reduction agreement" to include arrangements in which the employee must participate. The

Secretary asserts that section 418(t), which gave a district court jurisdiction to "redetermine the correctness" of the Secretary's denial of a state's tax refund claim, was merely a jurisdictional grant that gave the district courts the power to review the Secretary's decision under the prevailing legal standards. That standard, the Secretary argues, is the rule governing most administrative decisions, articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), requiring the courts to defer to the agency when the statute the agency interprets is ambiguous. New Mexico argues that former I.R.C. § 418(t)'s "redetermine the correctness" language gave the district court authority to review the Secretary's denial *de novo*. New Mexico thus argues that section 418(t) trumps Chevron or any other standard of deference that might apply to our review here. We decline to answer whether section 418(t) trumps Chevron because, whether we employ *de novo* review or deferential review, we find that the term "salary reduction agreement" is not ambiguous but rather has a plain meaning. Therefore, we must give effect to its language and are not required to defer to the agency's interpretation. See Chevron, 467 U.S. at 842 ("If the intent of Congress is clear, that is the end of the matter.").

Before discussing salary reduction agreements, however, we must first address what is meant by an employer "pickup" under section 414(h)(2). As it turns out, the meaning of that term dictates our understanding of what a "salary

- 8 -

reduction agreement" is under section 3121(v)(1)(B).  Congress did not define the phrase "pickup" and it is not readily apparent to us, or to the other circuits that have considered its meaning, what Congress meant by use of the phrase.  See Foil v. Commissioner, 920 F.2d 1196, 1201 (5th Cir. 1990); Howell v. United States, 775 F.2d 887, 888 (7th Cir. 1985).  Accordingly, the IRS has discretion to interpret this ambiguous term, see Howell, 775 F.2d at 888 n.*, and it has done so in several Revenue Rulings, see Rev. Rul. 81-36, 1981-1 C.B. 255; Rev. Rul. 81-35, 1981-1 C.B. 255; Rev. Rul. 77-462, 1977-2 C.B. 358.  While not binding on the courts of appeals, we do give IRS Revenue Rulings considerable weight when they have been in long use and the statutory language has been reenacted without change, indicating apparent congressional satisfaction with the prevailing interpretation.  See ABC Rentals v. Commissioner, 142 F.3d 1200, 1205 (10th Cir. 1998).  Here, in section 3121(v)(1)(B) of the Code, Congress makes specific reference to the "pickup referred to" in section 414(h)(2).  Congress enacted 414(h) in 1974.  IRS issued its Revenue Rulings interpreting the phrase "pickup" in 1977 and 1981.  In 1983 and 1984, Congress enacted and then amended section 3121(v)(1)(B), making specific reference to the pickups referred to in section 414(h).  Because 3121(v)(1)(B) refers to the pickups in section 414(h)(2), because the IRS interpreted section 414(h)(2) prior to section 3121(v)(1)(B)'s enactment, and because Congress did not indicate that it disapproved of the IRS's

interpretation, we follow the IRS's interpretation of section 414(h)(2).

Contributions are deemed "picked up" by the employer under section 414(h)(2) if two criteria are satisfied. See Rev. Rul. 81-35. First, the employer must specify that the contributions, although designated as employee contributions, are being paid by the employer in lieu of employee contributions. See id. Second, the employee must not have the option of receiving the contributed amounts directly instead of having them paid by the employer to the pension plan. See id.

The IRS provided the following examples to illustrate:

> A is employed by a school district within a state whose statutes require that employees contribute 7 percent of gross salary to the state's pension plan. . . .
> A entered into an agreement with the school district in 1977 pursuant to which the school district contributed 7 percent of A's salary, on A's behalf, to the state's qualified pension plan. The agreement designated these amounts as employee contributions and provided that amounts paid by the school district were to satisfy A's obligation to contribute 7 percent of salary to the state's pension plan. The agreement in question was voluntary and was not entered into as a condition of A's employment. . . .
> The employer in the above example did specify that the contributions, designated as employee contributions, were paid by the employer in lieu of contributions by the employee. A, however, voluntarily entered into an agreement with A's employer to have these contributions made to the state's pension plan. *Thus, A did exercise an option to have these contributions made to the pension plan rather than receiving the amounts directly and, therefore, such amounts are not considered 'picked-up,' within the meaning of section 414(h)(2), because they fail to satisfy the criteria stated above.*
> Accordingly, A may not, pursuant to section 414(h)(2) of the Code, exclude from gross income, for federal income tax purposes,

- 10 -

contributions made by the employing governmental unit to its qualified pension plan.

Id. (emphasis added). This situation presented in Revenue Ruling 81-35 is contrasted to the example presented in Revenue Ruling 81-36, which the IRS issued simultaneously with 81-35:

> In 1977 the union representing A negotiated an agreement with the city under which the city was to contribute 10 percent of covered employees' salaries to the state's qualified pension plan.
>
> Prior to the agreement, A's salary was $10,000, and A contributed $1,000 to the plan. As a result of the union agreement with A's employer, A's salary was reduced to $9,000, and the city contributed $1,000 to the plan; this $1,000 contribution was considered part of A's salary for purposes of determining the required employee contribution.
>
> The city's contributions were designated as employee contributions but, in addition, were specified by the city as being paid by the employer in lieu of employee contributions. Amounts paid by the city thus were to satisfy the employee's obligation to contribute 10 percent of salary to the state's pension plan.
>
> Rev. Rul. 81-35 . . . deals with a situation where the employee entered into a voluntary agreement with the employing governmental unit to have certain contributions made to the state's qualified pension plan. Because the employee was given the option of having these contributions made to the plan rather than receiving these amounts directly, the amounts contributed were determined not to be 'picked-up' within the meaning of section 414(h)(2) of the Code.
>
> In the above situation, A's union, on behalf of A and all other covered employees, negotiated an agreement with A's employer concerning the amounts to be picked up and contributed to the state's qualified pension plan. A thus was required to have the $1,000 contributed to the pension plan and was not given the option of instead receiving the contributed amounts directly. Thus $1,000 also was designated as being paid by the employer in lieu of required employee contributions.
>
> Accordingly, A may, pursuant to section 414(h)(2) of the Code, exclude from current gross income, for federal income tax purposes, all of the contributions made by the employing governmental unit to its

> qualified pension plan. Such 'picked-up' contributions are not includible in A's gross income until distributed or made available . . . .

Rev. Rul. 81-36. The distinction between the two examples is, in one sense, a fiction. In both examples, A takes the same amount home, and the employing governmental unit has paid out the same amount. Nevertheless, the distinction is significant because Congress has made it so, imposing a lesser tax burden on employees whose employers "pickup" their employee contributions than on those whose employers do not.

There is no question, given the IRS's interpretation of section 414(h)(2), that New Mexico picked up its employees' contributions from 1983 to 1986. The two necessary criteria, articulated in rulings 81-35 and 81-36, for contributions to be considered picked up under section 414(h)(2), existed in New Mexico during those years, and continue to exist today. First, the New Mexico statutes under which the states' pension plans are administered, see N.M. Stat. Ann. §§ 10-11-125, 22-11-21.1, require the State employer to specify that contributions, although designated as employee contributions, are to be paid by the employer in lieu of contributions by the employee. Second, under those same statutory sections, the employee does not have the option of receiving the contributed amounts directly. See id.

Thus, it is clear that the contributions under consideration here were "picked up" by New Mexico during the relevant time period. With that

understanding, we turn to section 3121(v)(1)(B).  Section 3121(v)(1)(B) includes as FICA wages "any amount treated as an employer contribution under section 414(h)(2) where the pickup referred to in such section is pursuant to a salary reduction agreement."  Congress did not define "salary reduction agreement" in the statute.  The State argues, though, that the meaning of the term is clear and that a salary reduction agreement excludes arrangements such as New Mexico's in which the employees' participation in the salary reduction plan is mandated by state statute.  Rather, the State contends that a salary reduction agreement "requires an individually negotiated contract under which an employee agrees to a salary reduction and an employer agrees to contribute the amount of the reduction to a qualified trust for the employee's benefit."  Appellant's Br. at 13.  According to the State, although New Mexico's pickup plan is one described in section 414(h)(2), it is not pursuant to a salary reduction agreement, and the contributions at issue here are not included within the FICA definition of wages.  The State relies on several different sources in crafting its arguments.  It looks to the common understanding of "agreement" to demonstrate that there can be no agreement where an employee's participation in the salary reduction plan is mandatory.  It examines the legislative history of section 3121(v)(1)(B).  It examines other provisions in the United States Code that contain the phrase "salary reduction agreement."

The State cannot be correct given our understanding of "pickup" in section 414(h)(2) and section 3121(v)(1)(B). The State's proposed definition of "salary reduction agreement" under section 3121(v)(1)(B) describes the precise arrangement presented in the IRS's example from Revenue Ruling 81-35, quoted above. There, the employee individually agreed with her employer that her salary would be reduced in exchange for the employer contributing to the state's pension plan. Under those facts, the IRS concluded that the contributions to the plan are not considered "picked up" within the meaning of section 414(h)(2) because the employee voluntarily agreed to the arrangement.

If contributions are not deemed "picked up" under section 414(h)(2), section 3121(v)(1)(B) does not implicate them. Only contributions that have been picked up are the subject of section 3121(v)(1)(B). Thus, our understanding of "salary reduction agreement" in section 3121(v)(1)(B) is dictated by our understanding of the term "pickup" as that term is used in section 414(h)(2). A pickup under section 414(h)(2) must be mandatory. The State argues that a salary reduction agreement must be voluntary. Under the State's definition of the latter term, however, section 3121(v)(1)(B) makes no sense; the two terms would be mutually exclusive. Because a pickup is mandatory, it could *never* be pursuant to a salary reduction agreement, as the State defines the latter term. Yet, section 3121(v)(1)(B) speaks directly to pickups that *are* pursuant to a salary reduction

agreement.

Thus, our interpretation of "salary reduction agreement" cannot be as narrow as the State asserts it should be. In order for the provision to operate coherently, the term must refer to something broader than "an individually negotiated contract under which an employee agrees to a salary reduction and an employer agrees to contribute the amount of the reduction to a qualified trust for the employee's benefit." Appellant's Br. at 13. Given the IRS's interpretation of "pickup" and given Congress's subsequent endorsement of that interpretation in section 3121(v)(1)(B), a salary reduction agreement necessarily includes any arrangement in which there is a reduction in an employee's salary in exchange for the employer's contribution of the amount of the reduction to a pension plan on the employee's behalf. An "agreement" is not limited to individually negotiated contracts, as the State suggests, but may also refer generally to "a manifestation of mutual assent on the part of two or more persons." RESTATEMENT (SECOND) OF CONTRACTS § 3. Such manifestation of assent "may be made by words or by any other conduct." Id. at comment b; see also id. at § 19 (elaborating on conduct as manifestation of assent). Here, an employee's decision to go to work or continue to work as a State employee constitutes conduct manifesting assent to a salary reduction in exchange for the State's contribution to a pension plan on the employee's behalf. The employee has "agreed" to the salary reduction by

continuing employment with the State.

We hold that the New Mexico State employee contributions to one of two pension plans from 1983 to 1986, mandatorily picked up by the State as employer contributions with a corresponding reduction in the employees' gross salaries, were contributions made pursuant to a salary reduction agreement. Accordingly, such contributions were subject to FICA tax under section 3121(v)(1)(B) of the Internal Revenue Code. The decision of the district court is AFFIRMED.